THE LAW FIRM OF

# CÉSAR DE CASTRO, P.C.

ATTORNEY AT LAW

The Trump Building
40 Wall Street, 28th Floor
New York, New York 10005

646.512.5806 Main
646.839.2682 Fax
cdecastrolaw.com

December 26, 2014

*Via ECF*

The Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re:    *United States v. Serrano*, 13 Cr. 58 (KBF)

Dear Judge Forrest:

We submit this letter in support of Anthony Serrano who will be sentenced by you on January 9, 2015. While Mr. Serrano maintains his innocence, it is respectfully requested that, based on the offenses for which Mr. Serrano was convicted at trial, this Court should sentence him to 144 months' imprisonment. For this forty-year-old, married man and father of a seven year-old son to whom he is completely devoted, a term of twelve years will mean that he will not be free until his son is an adult. However, based on the convicted offenses, 144 months' imprisonment will constitute a slight variance of the properly calculated advisory Sentencing Guidelines range, constitute a just punishment for the offense, more than adequately deter Mr. Serrano from committing any crimes in the future, and avoid unwarranted sentencing disparities.

At trial, the government sought to prove Mr. Serrano's involvement in a larger conspiracy then the one for which he was convicted. The jury correctly rejected any evidence that Mr. Serrano was involved in a heroin conspiracy. Instead, the jury explicitly found that he was guilty of a cocaine conspiracy involving 500 grams or more of cocaine. In this sentencing proceeding, however, the government will ask the Court to hold Mr. Serrano responsible for the heroin conspiracy that the jury rejected. Despite the preponderance of the evidence standard of a sentencing proceeding, we submit that the Court should respect the jury's special finding and sentence Mr. Serrano solely for what he was convicted.

Twelve years imprisonment is more than sufficient, and not greater than necessary to achieve 18 U.S.C. § 3553(a)'s sentencing goals because: (1) Mr. Serrano's history and characteristics establish that he is a beloved and needed man in his family and larger Jersey City community despite his prior contacts with law enforcement; (2) the nature and circumstances of the offense

as presented at trial establish that Mr. Serrano should not be held responsible for the scope of larger, unproven, robbery and narcotics conspiracies; (3) twelve years imprisonment will deter Mr. Serrano and others, constitute just punishment, promote respect for the law, and reflect the seriousness of the offense; and (4) sentencing Mr. Serrano to any term greater than twelve years will result in unwarranted sentencing disparities.[1]

### I.   The Presentence Investigation Report and U.S. Sentencing Guidelines Advisory Range

This Court should reject the provisions of the Probation Office's Presentence Report ("PSR") that attribute any more than 2 kilograms of cocaine to Mr. Serrano.  In both the factual recitation and the United States Sentencing Guidelines calculation, the Probation Office attributes 22 kilograms of heroin and 2 kilograms of cocaine to Mr. Serrano without any knowledge or understanding of the evidence at trial or, more importantly, the details of the jury's findings as part of its verdict.  Based on the lack of evidence at trial and the specific jury verdict, Mr. Serrano should not be held accountable for any heroin in connection with his sentencing.  He was clearly convicted of the robbery conspiracy for his alleged role in conspiring to steal 2 kilograms of cocaine from a drug dealer and this Court should only hold him accountable for those drugs.

The Court may recall that following Mr. Serrano's trial, he  moved for the replacement of counsel.  After meeting with new potential Criminal Justice Act ("CJA") counsel regarding post-trial strategy, Mr. Serrano withdrew his request.  While Mr. Serrano's motion for new counsel was pending and he was meeting with potential new CJA counsel, the Probation Office issued its draft PSR.  By September 2014, the issues regarding our continued appointment as counsel were resolved and by email dated September 21, 2014, I informed Probation Officer Selwyn Foderingham (the author of the draft PSR) that I would remain as Mr. Serrano's counsel.  *See* Email to Officer Foderingham Annexed Hereto at Exhibit "A."  With respect to Mr. Serrano's objections to the PSR, I informed him that our main objection was that the draft PSR failed to take into account the jury's rejection of the government's evidence regarding the heroin conspiracy.  *Id.*  I informed him that I would send him specific objections unless he did not intend to make any changes and I would address my issues directly with the Court.  *Id.*

By email dated September 22, 2014, Officer Foderingham informed me that "unfortunately [he was] not advised of the particulars by the [g]overnment" and that based on the "standing order" he would not be making any edits to the PSR and suggested that I raise these issues with the Court.  *Id.*  On October 23, 2014, Mr. Serrano filed his post-trial motions and on November 13, 2014, the government submitted its opposition.  On December 3, 2014, we contacted Officer Foderingham by letter requesting that he reconsider his decision not to amend the PSR concerning the offense conduct based on the jury's special verdict.  *See* Letter to Officer Foderingham Annexed Hereto at Exhibit "B."  Shortly thereafter, we learned that Officer Foderingham had retired, therefore, after speaking with the Probation Office, by email dated December 10, 2014, we forwarded our previous request to Supervising Officer Jineen Forbes

---

[1] This recommendation is, of course, assuming that the Court rejects Mr. Serrano's post-trial motions.  As the Court is aware, Mr. Serrano has moved this Court for (1) a Judgment of Acquittal as to Count 3 of the Indictment pursuant to Federal Rule of Criminal Procedure 29, and (2) a Judgment of Acquittal or alternatively, setting aside the verdict and granting a new trial, pursuant to Rule 33 as to all counts in the Indictment.

who then sought a response from the government in order to potentially amend the PSR.  *See* Email of December 10, Letter of December 10, and Emails of December 17, 2014, Annexed Hereto at Exhibit "C."  The government's position was that it had proved, by a preponderance of the evidence, the additional narcotics, *i.e.*, the 22 kilograms of heroin.  *Id.*

In response, by email to Ms. Forbes dated December 18, 2014, I stated the following:

> While I agree with the government that the sentencing standard is a preponderance of the evidence, I do not agree that the trial evidence meets that standard. As we stated in our previous letter and our post-trial motions (attached hereto), we believe that the jury's verdict spoke volumes regarding the adequacy and persuasiveness of the government's proof.  Mr. Serrano was convicted of conspiring to possess and distribute 500 grams or more of cocaine.  The jury specifically rejected the government's evidence regarding Mr. Serrano's involvement in any heroin conspiracy.
>
> Nonetheless, the government asks you to accept its conclusion that the trial evidence satisfied the preponderance of the evidence standard as it relates to the heroin conspiracy.  It asks you to blindly accept its conclusion in this regard without the Probation Office's review of the trial testimony and/or evidence.  If the Probation Office is not in a position to review the trial evidence and make its own independent evaluation of drug quantity then it should not make a recommendation at all.  Otherwise, the Probation Office serves no other purpose then to verify the government's Guidelines calculations. Accepting the defense position in this regard, however, would be completely consistent with the jury's verdict.

*Id.*  As of this date, we have not received a response.

The PSR's advisory Guidelines calculation and recommendation is driven by the Probation Office's blind conclusion that Mr. Serrano was responsible for conspiring to possess and distribute 22 kilograms of heroin and 2 kilograms of cocaine.  This Court should not hold Mr. Serrano responsible for any heroin because it is inconsistent with the jury's special verdict.  The PSR should be amended at paragraphs 55, 56, 58, 59, 60, and 69 in order to remove any reference to the heroin conspiracy.  And it is respectfully submitted that Mr. Serrano's base offense level should be 26 based on 2 kilograms of cocaine.  *See* Guidelines § 2D1.1 Drug Quantity Table (2014).  Accordingly, with a Criminal History Category IV, Mr. Serrano's advisory Guidelines range should be 92 to 115 months' imprisonment followed by the minimum term of imprisonment mandated by 18 U.S.C. §924(c).  Accordingly, his advisory Guidelines range should be 176 to 199 months' imprisonment.

## II.   The Appropriate Sentence Under 18 U.S.C. § 3553(a)

After this Court takes into consideration (1) the appropriate advisory Guidelines range, (2) Mr. Serrano's personal history and characteristics that show, despite his difficult and directionless upbringing, he has become an indispensable part of not only his immediate family's lives but the lives of the Jersey City community in which he has lived for his entire life, and (3) the sentences received by his co-defendants who were convicted in participating in a brazen attempted robbery

at which Mr. Serrano was not present and for which he was not convicted, we respectfully submit that a sentence of twelve years imprisonment is appropriate.

   1. <u>Mr. Serrano's History and Characteristics</u>

Anthony Serrano was born in Jersey City, New Jersey in 1974. Anthony was the younger of two children in a very poor household. When he was only one, his parents separated. Anthony never knew his father at all. His mother was on public assistance and Anthony learned at a very young age that she was also a drug addict. After his mother and father separated, his mother started seeing Ronald Trowell who moved in with the family. Mr. Trowell was a truck driver that helped support the family, however, he also physically abused Anthony. Mr. Trowell lived with the family until his death when Anthony was around eleven-years-old.

After the passing of Mr. Trowell, Anthony moved to his grandmother's house who lived around the corner. Anthony had little to no supervision at his mother's home, however, things were not much better at his grandmother's house. He essentially raised himself. *See* Letter of Linda Serrano Annexed Hereto at Exhibit "D." Anthony lived with his grandmother while he attended James Ferris High School in Jersey City. Anthony did not complete high school because he was expelled for fighting. After being expelled from high school and having no supportive or positive adult role models, at the age of seventeen he moved out of his grandmother's house and moved in with a girlfriend. From 1993 to 2002, a directionless Anthony found himself in contact with law enforcement officers on numerous occasions. As reflected in the PSR, many of his arrests in that period were for relatively minor offenses, including criminal mischief and various noise complaints connected to his love of music and, in particular, loud music.[2]

Despite his various arrests, from 1995 to 2002 Anthony was able to maintain steady employment with American Scaffolding Company, ultimately getting promoted to foreman in 2002. Not all of his arrests were for minor offenses, and in 2002, Anthony was prosecuted in the District of New Jersey for being a felon in possession of a firearm. Mr. Serrano accepted responsibility for his criminal conduct and pled guilty. He was sentenced to 40 months' imprisonment. While incarcerated, Anthony obtained his General Equivalency Diploma.

Mr. Serrano served his sentence and was determined to make positive life changes going forward. Anthony married Linda Coleman and in 2006, the Serranos moved into the home in which Linda grew up. Mr. Serrano obtained employment as a construction laborer and joined the New Jersey Local 3 Union. In 2007, their son Jager was born. From 2006 until his arrest, Mr. Serrano maintained steady employment as a laborer in numerous New Jersey construction projects for various companies including Nordic Contracting Co, Forza Contracting, Dyer Insulations, Fastrack Construction, Total Construction Services, and Excel Service & Construction. *See* Various Paystubs Annexed Hereto at Exhibit "E." And one month prior to his arrest, he completed a construction laborer skills program in order to become a Local 3 Shop Steward.

---

[2] At the time of his arrest, the government seized a large capacity hard drive from Mr. Serrano. That hard drive contained various music files as well as professional music editing and engineering software.

4

Since Jager's birth, Mr. Serrano has been a devoted father and played an extremely active role in his son's life and in the lives of those in his community. Mr. Serrano and Jager were inseparable. *See* Letters in Support at Exhibit D. Simple proof of his devotion to his family can be found in Mr. Serrano's phone, seized by the government and subject to a search warrant. The vast majority of photos in Mr. Serrano's phone were of Jager and the Serrano's spending time together as a family and, particularly of Mr. Serrano and Jager playing baseball, riding scooters, and skateboarding. *See e.g.,* Photos Annexed Hereto at Exhibit "F."

Mr. Serrano coached his son's little league team, the same league in which he played as a child, and donated equipment to the league for children who could not afford their own. *See* Joint Letter from Members of the Roberto Clemente Little League submitted in support of Mr. Serrano's bail application, and Letter of Linda Serrano at Exhibit D. Mr. Serrano devoted much of his spare time to working closely with the Jersey City Parks Department as well, working to restore the community's local skate park and start boxing classes. *Id.* Mr. and Mrs. Serrano created a petition in support of the skate park and attended several city hall meetings with the Jersey City police chief to discuss the importance of the children of their community to have proper safety equipment and outlets to keep them off the streets. *Id.* As expressed throughout the various letters attached, Mr. Serrano is a valued member to his community whether it is as a little league coach, opening up the skate park and ball fields, coaching boxing, shoveling neighbors' cars out in the snow, providing batteries and flashlights to people in a blackout, trying to develop positive programs for the neighborhood youth to keep them off the street, or simply helping his elderly neighbors by watching television with them or just carrying their groceries.

2. The Nature of the Offenses

As noted above, Mr. Serrano was convicted for participating in one robbery organized by the Camacho crew. At trial, the government sought to prove his membership in a much larger conspiracy that was responsible for a number of robberies and the use and brandishing of firearms as part of some or all of those robberies. The government further sought to prove that Mr. Serrano was guilty of a conspiracy to distribute heroin and, on one occasion, cocaine.

The jury found Mr. Serrano guilty of the narcotics conspiracy count, however, it rejected the government's claims that Mr. Serrano participated in a heroin conspiracy. The jury's rejection of the heroin allegations represents a rejection of the government's proof as to his involvement in all but the October 14, 2012, robbery involving cocaine. Accordingly, the nature and circumstances of the offense mandate that the Court sentence Mr. Serrano only for his participation in the October 14, 2012 robbery and, as addressed more fully below, his sentence should be in line with other similarly situated defendants convicted of participating in only one of the Camacho Crew's several robberies.

3. Unwarranted Sentencing Disparities Would Result If Mr. Serrano Was Sentenced to More Than 144 Months' Imprisonment

As noted above, Mr. Serrano was convicted of participating in only one of the alleged robberies committed by the Camacho crew. The government's case was overwhelmingly about the sting operation in which seventeen people, including Javion and Julio Camacho were arrested and

5

prosecuted. Javion and Julio Camacho were the admitted leaders of the robbery conspiracy. Mr. Serrano was not present on January 9, 2013 and, we submit, the government failed to prove that he was a member of the Camacho robbery crew. Nonetheless, the jury convicted Mr. Serrano of being a participant in the October 14, 2012, robbery in which a firearm was allegedly brandished by Javion Camacho. Accordingly, Mr. Serrano should only be sentenced to a term of imprisonment that reflects the conduct for which he was convicted.

Furthermore, Mr. Serrano should not be punished for exercising his right to trial. A recent report issued by Human Rights Watch notes, citing data from the U.S. Sentencing Commission, that "in 2012, the average sentence of federal drug offenders convicted after trial was three times higher (16 years) than that received after a guilty plea (5 years and 4 months)." HUMAN RIGHTS WATCH, AN OFFER YOU CAN'T REFUSE (Dec. 2013) p. 2, *available at* http://www.hrw.org/sites/default/files/reports/us1213_ForUpload_0_0_0.pdf; *see also generally U.S. v. Holloway*, 95 Cr. 78 (JG), 01 Cv. 1017 (JG), 2014 WL 3734269, at *2 (E.D.N.Y. July 28, 2014) (vacating two of defendant's prior convictions in light of unjust sentence produced by mandatory minimums where defendant's choice to proceed to trial cost him a trial penalty of 42 years, noting that co-defendant who engaged in same conduct as defendant, but who testified for prosecution at the defendant's trial received a sentence of 27 months' imprisonment). Notably, of the seventeen defendants who have been sentenced in this matter only two of those individuals, like Mr. Serrano, were not present during the January 9, 2013, attempted robbery, *i.e.*, Jauncey Valle and Walfredo Suarez. Sentencing Mr. Serrano to the applicable mandatory minimum of 144 months' imprisonment would accomplish this goal as it is more in line with the sentences received by other similarly situated co-defendants.

The chart below summarizes the various defendants sentenced in this matter for which there is public information available.

| Name | Role | Guidelines | Sentence |
|---|---|---|---|
| Javion Camacho | Leader/organizer of and participant in 1/2013 robbery and multiple other robberies; point of contact for informant; "most culpable member of the conspiracy" | 151-188 months | 250 months |
| Julio Camacho | Participant in 1/2013 robbery - his role was the muscle, *i.e.*, was going to go into house with loaded guns and confront victims; tried to buy a gun two days before 1/2013 robbery; "one of the most culpable members" of the crew; participant in other armed robberies | 90-97 months | 150 months |
| Jauncey Valle | Not a participant in the 1/2013 robbery but introduced Javion to CW, described by gov't as having "enthusiastically played a key role" in the crime that he "personally brokered it and encouraged the use of violence in it." | 151-188 months | 151 months |

| | | | |
|---|---|---|---|
| Alex Cespedes | Participant in 1/2013 robbery - he was driving the police car; described by government as a "core member" of the crew; participant in multiple other robberies in 2012 | 46-57 months | 46 months |
| Gary Sanchez | Participant in 1/2013 robbery - drove one of the cars - but not in car where guns were found; part of a New York-based crew of "prolific home invaders"; one of the guns they brought to 1/2013 robbery had been stolen from robbery of heroin dealer two days earlier by NY crew | 57-63 months | 63 months |
| Manuel Pimenteo | Participant in 1/2013 robbery - was in car with guns, Rabbit, and other robbery tools; part of a New York-based crew who "regularly committed home invasions of drug dealers" | 93-101 months | 97 months |
| Domingo Vasquez | Participant in 1/2013 robbery - was in car with guns, Rabbit, and other robbery tools; "important member" of NY crew who "participated in planning meetings for robberies"; one of the guns they brought to 1/2013 robbery had been stolen from robbery of heroin dealer two days earlier by NY crew | 101-111 months | 106 months |
| Benjamin Jimenez | Participant in 1/2013 robbery - was in car with guns, Rabbit, and other robbery tools, participated in planning meetings; member of NY crew participated in planning meetings for robberies; one of the guns they brought to 1/2013 robbery had been stolen from robbery of heroin dealer two days earlier by NY crew | 93-101 months | 97 months |
| Rafael Huerta | Participant in 1/2013 robbery but was in a car where no one possessed a gun; | 46-57 months | 40 months |
| Oscar Noriega | Participant in 1/2013 robbery - found in back of police car; participated in planning meetings on the day of 1/2013 robbery - he retrieved a vehicle with hidden compartments for use in 1/2013 robbery; involved in multiple other robberies | 46-57 months | 53 months |

7

| | | | |
|---|---|---|---|
| Victor Jose Gomez | Participant in 1/2013 robbery - was in car where no one possessed a firearm; communicated with Javion multiple times in days prior to 1/2013 robbery | 51-63 months | 40 months |
| Joshua Roman | Participant in 1/2013 - in car with Javion and described by gov't as having "played an integral role" in the scheme, involved in planning; offered to sell Julio a rifle two days before the robbery | 90-97 months | 93 months |
| Victor Moral | Participant in 1/2013 robbery, with guns and drugs; organized NY crew to be a part of 1/2013; participant in multiple other robberies - while working for gov't; career offender | Cooperating Witness | 42 months |
| Ramon Jimenez | Participant in 1/2013 robbery - driving car where no one had firearms; member of NY crew for which he played a significant role and acted as a recruiter; told CW he had recruited for 1/2013 robbery that he had committed 100 robberies with the Rabbit | 46-57 months | 53 months |
| Ali Husain | Participant in 1/2013 robbery - passenger in police car with Javion; participant in many other robberies; involved in planning for other robberies; "stored guns for the crew" | 46-57 months | 57 months |
| Louis Borrero | Participant in 1/2013 robbery and in many other robberies - was capable/willing of going into house and tying up victims; dealt heroin; career offender; convicted after trial | 420 months to life | 324 months |
| Walfredo Suarez | Not a participant in the 1/2013 robbery but involved in other violent robberies with the crew; career offender | 151-188 months | 60 months |

### III. Conclusion

For all of the foregoing reasons, this Court should sentence Mr. Serrano to 144 months' imprisonment. Twelve years imprisonment is sufficient but not greater than necessary to achieve § 3553(a)'s sentencing goals because: (1) Mr. Serrano's appropriately calculated advisory Guidelines range is 92 to 115 months' imprisonment plus the mandatory minimum mandated by 18 U.S.C. § 924(c); (2) his history and characteristics as well as the nature and circumstances of the offenses *for which he was convicted*, establish that 144 months' imprisonment will sufficiently deter Mr. Serrano and constitute just punishment; and (3) a sentence greater than 12 years imprisonment will result in unwarranted sentencing disparities.

Respectfully Submitted,

/s/

César de Castro
Valerie Gotlib

cc:   Rachel Maimin
      Rahul Mukhi
      Assistant United States Attorneys (*via* ECF)