USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JAN 0 6 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                                    :
UNITED STATES OF AMERICA                                            :
                                                                    :
               -v-                                                  :    13-cr-58 (KBF)
                                                                    :
ANTHONY SERRANO,                                                    :    OPINION & ORDER
                                                                    :
                              Defendant.                            :
                                                                    :
------------------------------------------------------------------- X

KATHERINE B. FORREST, District Judge:

Defendant Anthony Serrano was convicted of three counts arising from his participation in a robbery and drug crew that impersonated police officers in order to rob other drug dealers. On October 24, 2014, Serrano moved for (1) a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure as to Count 3 of the Indictment; and (2) a judgment of acquittal or alternatively, setting aside the verdict and granting a new trial pursuant to Rule 33 as to all counts in the Indictment. (ECF No. 485.) For the reasons that follow, Serrano's motion is DENIED.

I.   BACKGROUND

The Indictment charged Serrano with three counts arising from his participation in a robbery and drug crew (the "Crew") that impersonated police officers in order to rob other drug dealers. (ECF No. 294.) Count One charged participation in a conspiracy from 2012 through July 2013 to distribute or possess with intent to distribute a kilogram or more of heroin and half a kilogram or more of cocaine, in violation of 21 U.S.C. §§ 841(a), (b)(1)(A)–(B), 846. Count Two charged

participation in a Hobbs Act robbery conspiracy during that time, in violation of 18 U.S.C. § 1951. Count Three charged that in connection with the crimes charged in the other two counts, Serrano carried, used, or possessed a firearm, which was brandished, or aided and abetted the same, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), (2).

Trial commenced June 16, 2014 and ended June 20, 2014, when the jury convicted Serrano on all three counts. However, with respect to Count One, the jury found that while the Government had proven beyond a reasonable doubt that Serrano conspired to distribute 500 grams or more of cocaine, the Government had not proven beyond a reasonable doubt that Serrano conspired to distribute either one kilogram or more of heroin, or the lesser included amount of 100 grams or more of heroin.

At trial, three witnesses provided testimony as to the brandishing charge which stemmed from a robbery on October 14, 2012. The first was Victor Moral, a cooperating witness and fellow Crew member who participated in that robbery alongside Serrano and his co-defendants Javion Camacho and Alex Cespedes. The other two witnesses were the October 14, 2012 robbery's victims, Erickson Gilbert and Escarly Ynfante.

Moral provided testimony both as to the preparations for the robbery and the general sequence of events during the robbery itself. Regarding the preparations, Moral testified that when the Crew was planning the robbery, Serrano told Moral that he had guns he would bring; and that before the robbery began, Serrano

handed a bag containing a handgun to a "skinny kid," who then handed it to Moral, who in turn handed it off to Camacho. (Tr. 309, 323-26, 339.)

As to the robbery itself, Moral testified that to perpetrate the robbery Camacho and Cespedes used a fake police car and impersonated police officers. (Tr. 309.) They pulled over the victims' vehicle and asked them, in an authoritative tone, for their license and registration. (Tr. 346.) Camacho and Cespedes then walked the victims from their vehicle toward the fake police car; as they did so, Moral jumped in the victims' vehicle and drove off. (Tr. 346.)

Gilbert similarly testified that during the robbery he was pulled over by the fake police car, which had its lights and sirens on. (Tr. 656.) One of the robbers then said to Gilbert, "Get the fuck out of the car. FBI. Police." (Tr. 656.) Gilbert was then slammed against the car and searched. (Tr. 656-57.) One of the robbers jumped in Gilbert's vehicle and drove away. (Tr. 657-58.) After the other robbers took off, Gilbert testified that he said to himself, "This is really strange. The police don't do that." (Tr. 657.) A bystander later asked him what happened, and he said "I don't know what happened. I don't think it was the police; I think it was something else." (Tr. 657.)

Moral, Gilbert, and Ynfante each provided testimony relevant to whether a firearm was used or carried during the robbery. Moral testified that Camacho was wearing "a police vest . . . handcuffs, a gun and a badge," and that a handgun was strapped into the vest. (Tr. 344-45.) According to Moral, the handgun's handle was visible. (Tr. 345.)

3

Gilbert testified that during the robbery one of the robbers was wearing a bullet-proof vest and "was clutching at something under his arm . . . where his vest was," and this gesture made him think the robber had a gun. (Tr. 656, 658.) In response to the question "Now, did you notice anything that you thought might be a weapon?" Gilbert stated "I never saw the weapon, but he had this bulge here and he wanted to do this: Police. Police. Get out of the car." (Tr. 658.) When speaking to the police after the robbery, Gilbert "told them it was a gun but [he] didn't see it." (Tr. 661.)

Ynfante testified that she did not actually see a gun, but she noticed something that she thought might be a weapon, and when asked to elaborate as to what that something was, she specified that it was "a black bulge" in an area where "they usually get their gun." (Tr. 676.) She also testified that the thing that she thought might be a gun was located "around the waist . . . on the right side." (Tr. 676.)

Moral, Gilbert, and Ynfante also each provided testimony relevant to the question of whether the members of the Crew who participated in the robbery intended to intimidate, or actually did intimidate, the victims. Moral testified that during the Crew's robberies, members of the Crew "sometimes" were "armed" with "[a] handgun." (Tr. 263.) He also testified that he or other Crew members had carried a handgun during robberies "[s]o [they] could intimidate the people [they] were robbing." (Tr. 263.)

4

Gilbert testified that he was scared during the robbery "because anything could have happened. Anything." (Tr. 659.) When asked how he felt when he saw the man wearing the police vest reach to his side, he testified: "I couldn't speak. I had never been involved in an event like that. And I felt even worse knowing that my two little girls had been in the van minutes—like a little over an hour before." (Tr. 659.) Ynfante testified that throughout the entire robbery she was "very nervous." (Tr. 679.)

II.  RULES 29 AND 33

   A.  Rule 29

A defendant challenging the sufficiency of the evidence bears a heavy burden. United States v. Gaskin, 364 F.3d 438, 459 (2d Cir. 2004). The standard of review is exceedingly deferential. United States v. Hassan, 578 F.3d 108, 126 (2d Cir. 2008). Because Serrano was found guilty by the jury at trial, the Court views the evidence in the light most favorable to the Government, crediting every inference that could have been drawn in the Government's favor and deferring to the jury's assessment of witness credibility and the weight to be given to the evidence. See United States v. Chavez, 549 F.3d 119, 124 (2d Cir. 2008). Under this standard, a jury verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Persico, 645 F.3d 85, 105 (2d Cir. 2011); United States v. Chang-An Lo, 851 F.2d 547, 554 (2d Cir. 1988). Where the jury has been properly instructed on alternative theories of liability, the reviewing court must affirm where the evidence is sufficient

5

under any of the theories. United States v. Masotto, 73 F.3d 1233, 1241 (2d Cir. 1996).

B. Rule 33

Rule 33 provides that a district court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The question for the Court is whether manifest injustice would result if it allows a guilty verdict to stand. See United States v. Snype, 441 F.3d 119, 140 (2d Cir. 2001). In connection with a Rule 33 motion, a court may weigh evidence and assess the credibility of witnesses, but it should only intrude upon the jury's function of assessing a witness's credibility in exceptional circumstances. United States v. Thompson, 528 F.3d 110, 120 (2d Cir. 2008). Such exceptional circumstances exist, for example, when testimony is "patently incredible or defies physical realities." United States v. Cote, 544 F.3d 88, 101 (2d Cir. 2008) (quoting United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992)).

III. DISCUSSION

A. Victor Moral's Testimony

Serrano argues that he is entitled to relief under Rules 29 and 33 because Moral's testimony was unreliable and completely incredible, and because it was essential to Serrano's conviction. Specifically, Serrano argues that the Court should disregard Moral's testimony because the jury found the Government had not proven that Serrano was responsible for more than 100 grams or 1 kilogram of heroin, which in turn implies that the jury found Moral to be unreliable and completely incredible.

6

This Court disagrees. The jury's finding with respect to heroin does not mean that it "rejected" Moral's testimony, let alone that it did so wholesale; it means only that the jury did not believe that the Government did not establish beyond a reasonable doubt that Serrano was responsible for conspiring to distribute more than 100 grams or 1 kilogram of heroin—no more, no less. Further, Moral's testimony itself did not defy logic or physical reality so as to create the exceptional circumstances under which it would be appropriate for this Court to intrude upon the jury's function in assessing his credibility. Moral's credibility as a witness is not a valid basis upon which to grant Serrano relief under Rules 29 or 33.[1]

### B. Counts One and Two: Conspiracy Charges

#### 1. Legal Standard.

##### a) Inconsistent verdicts.

Second Circuit law "clearly preclude[s]" sufficiency challenges based on inconsistent verdicts. Chang An-Lo, 851 F.2d at 560; see also United States v. Powell, 469 U.S. 57, 65-69 (1984) (inconsistent jury verdicts of guilty on some counts and not guilty on other counts are not a basis for setting aside verdicts of guilty); United States v. Gray, 412 Fed. App'x 11, 14 (2d Cir. 2011) (summary order) ("The Supreme Court has held that inconsistency among verdicts is not a basis for setting

---

[1] Serrano argues that "[I]t simply defies logic that Mr. Moral would only tell the government regarding Mr. Serrano's alleged supply of a firearm for that robbery one month before the commencement of trial and after he had proffered with the government more than 20 times." (ECF No. 486 at 12.) This argument was fully aired in front of the jury, and accordingly it is not a proper basis for vacating a verdict due to insufficiency of the evidence. See, e.g., United States v. Florez, 447 F.3d 145, 156 (2d Cir. 2006) (declining to "second-guess a jury's credibility determination on a sufficiency challenge" where a defendant "simply repeats facts and arguments already presented to the jury"); United States v. Roman, 870 F.2d 65, 71 (2d Cir. 1989) ("[T]he proper place for a challenge to a witness's credibility is in cross-examination and in subsequent argument to the jury . . . ." (quotation and internal quotation marks omitted)).

aside a conviction." (citing Powell, 469 U.S. at 69)). As the Supreme Court explained in Powell, inconsistent verdicts may be the product of compromise, mistake or lenity on the part of the jury—but this is no reason to permit a defendant to attack a conviction on the ground of inconsistent verdicts. 469 U.S. at 65-66 & n.7; see also United States v. Acosta, 17 F.3d 538, 546 (2d Cir. 1994) ("A court knows only what the jury's verdicts were, not what the jury found, and it is not within the province of the court to attempt to determine the reason or reasons for verdicts that are inconsistent.").

    b)  Conspiracy generally.

When a defendant challenges the sufficiency of the evidence in a conspiracy case, deference to the jury's findings as to a conspiracy charge "is especially important . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." United States v. Santos, 541 F.3d 63, 70 (2d Cir. 2008) (ellipsis in original) (quoting United States v. Morgan, 385 F.3d 196, 204 (2d Cir. 2004)).

To find a defendant guilt of a conspiracy charge, the jury must find beyond a reasonable doubt that the defendant "was a member of the conspiracy charged in the indictment, not some other conspiracy." United States v. Aracri, 968 F.2d 1512, 1520 (2d Cir. 1992) (approving of jury instructions containing this language). The government must present "some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." United States v.

Rodriguez, 392 F.3d 539, 545 (2d Cir. 2004) (quoting United State v. Morgan, 385 F.3d 196, 206 (2d Cir. 2004)) (internal quotation marks omitted).

The Government only needs to show that the defendant "agreed to participate in what he knew to be a collective venture directed toward a common goal." United States v. Berger, 224 F.3d 107, 114 (2d Cir. 2000). It is not required that the defendant "conspire directly with every other member of it, or be aware of all acts committed in furtherance of the conspiracy, or even know every other member." United States v. Vanwort, 887 F.2d 375, 383 (2d Cir. 1989) (quoting United States v. Rooney, 866 F.2d 28, 32 (2d Cir. 1989)). "The defendant's participation in a single transaction can, on an appropriate record, suffice to sustain a charge of knowing participation in an existing conspiracy." Santos, 541 F.3d at 73 (quoting United States v. Miranda-Ortiz, 926 F.2d 172, 176 (2d Cir. 1991)). "[A] single act may be sufficient for an inference of involvement in a criminal enterprise of substantial scope at least if the act is of a nature justifying an inference of knowledge of the broader conspiracy." United States v. Huezo, 546 F.3d 174, 180 (2d Cir. 2008) (quoting United States v. Tramunti, 513 F.2d 1087, 1112 (2d Cir. 1975)).

    c)  Multiple-conspiracies defense.

A defendant can establish a multiple-conspiracies defense where "(1) the indictment charged a single conspiracy, but the proof disclosed several independent conspiracies, and (2) [the defendant] was so prejudiced by this variance as to be denied a fair trial." United States v. Pena, 274 Fed. App'x 84, 85 (2d Cir. 2008) (summary order) (quoting United States v. Desimone, 119 F.3d 217, 225-26 (2d Cir. 1997)). "[T]he test for reversible error, if two conspiracies have been established

9

instead of one, is whether the variance affects substantial rights. . . . The material inquiry is not the existence but the prejudicial effect of the variance." United States v. Sir Kue Chin, 534 F.2d 1032, 1035 (1976) (quoting United States v. Agueci, 310 F.2d 817, 827 (2d Cir. 1962)). Even if two separate conspiracies are proved at the trial of a single defendant, if those two conspiracies could properly have been joined in the indictment, the defendant "could in no event have been prejudiced by the failure of the indictment to charge two conspiracies rather than one." Sir Kue Chin, 534 F.2d at 1035. A "single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance." United States v. Payne, 591 F.3d 46, 61 (2d Cir. 2010) (quoting United States v. Geibel, 369 F.3d 682, 689 (2d Cir. 2004)).

    2.    Discussion.

Serrano argues that the jury's finding with respect to heroin weight is inconsistent with the verdicts as to the narcotics conspiracy and Hobbs Act conspiracy counts, as well as the jury's finding that Serrano conspired to distribute 500 grams or more of cocaine. With regard to the latter, Serrano argues that the "jury's rejection of the heroin conspiracy evidence amounts to a finding that the cocaine conspiracy was a separate independent conspiracy from the heroin conspiracy," which implies that the evidence at trial "proved the existence of a separate conspiracy for which Mr. Serrano was not charged." (ECF No. 486 at 13.)

This Court disagrees. First, any inconsistency between the jury's verdicts is not a basis upon which this Court may grant Serrano relief under Rules 29 or 33.

Second, logic does not support Serrano's argument. A single narcotics conspiracy may involve one or more types of narcotics; that the jury found Serrano guilty on one type and not the other does not mean it necessarily found more than a single narcotics conspiracy. Third, even if the jury's finding as to heroin weight implies that the cocaine conspiracy was a separate independent conspiracy from the heroin conspiracy, Serrano suffered no prejudice because he was prosecuted and tried as a single defendant, and therefore both of the conspiracies were properly joined in the indictment. See Sir Kue Chin, 534 F.2d at 1035.

Further, Serrano's conspiracy convictions on Counts One and Two were sufficiently supported by the evidence. Those convictions did not need to be supported by evidence that Serrano participated in heroin-related robberies. Rather, the Government needed to prove only that Serrano engaged in a "single transaction" or a "single act" demonstrating his knowledge of the broader narcotics and robbery conspiracies charged in the indictment, and it did so by proving Serrano's participation in the October 14, 2012 robbery through testimony by Moral, Gilbert, and Ynfante, cell site records, and phone records.

    C.    Count Three: Firearms Charges

        1.    Use, carrying, or possession of a firearm.

           a)    Legal standard.

18 U.S.C. § 924(c)(1)(A)(i) imposes a five-year mandatory sentence for "any person who, during and in relation to any crime of violence . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm."

A conviction under the "use" prong requires the Government to establish "active employment of the firearm," which includes brandishing, displaying, and firing the firearm, Rosario v. United States, 164 F.3d 729, 734 (2d Cir. 1998) (citing Bailey v. United States, 516 U.S. 137, 144 (1995)), as well as "a reference to a firearm calculated to bring about a change in the circumstances of the predicate offense," Bailey, 516 U.S. at 148. A defendant "carries" a firearm if he "'either (1) had physical possession of the firearm, . . . or (2) moved the firearm from one place to another.'" Rosario, 164 F.3d at 734 (alteration in original) (quoting United States v. Canady, 126 F.3d 352, 358 (2d Cir. 1997)).

"In order to establish that a defendant possessed a firearm within the meaning of § 924(c), the government need not prove that he physically possessed it; proof of constructive possession is sufficient." Chavez, 549, F.3d at 129. "Constructive '[p]ossession of a firearm may be established by showing that the defendant knowingly [had] the power and the intention at a given time to exercise dominion and control over [it].'" Id. (alterations in original) (quoting United States v. Finley, 245 F.3d 199, 203 (2d Cir. 2001)).

A defendant may be found guilty of aiding and abetting a § 924(c) violation if he "actively participated in the underlying drug trafficking or violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission." Rosemond v. United States, 134 S. Ct. 1240, 1243 (2014). Additionally, a defendant could be found guilty of a § 924(c) violation based on the theory of criminal liability articulated in Pinkerton v. United States, 328 U.S. 640

(1946), which permits one conspirator to be found guilty of foreseeable substantive offenses committed by his co-conspirators in furtherance of the conspiracy. Masotto, 73 F.3d at 1239-40 ("It is well-settled in this Circuit that a jury may be instructed on the Pinkerton theory of liability in connection with a charged violation of § 924(c)."). A jury may find a defendant guilty on a substantive count under a Pinkerton theory of liability "without specific evidence that he committed the act charged if it is clear that the offense had been committed, that it had been committed in furtherance of an unlawful conspiracy, and that the defendant was a member of that conspiracy.'" United States v. Gallerani, 68 F.3d 611, 620 (2d Cir. 1995) (quoting United States v. Harwood, 998 F.2d 91, 100 (2d Cir. 1993)).

        b)      Discussion.

Serrano argues that this Court should vacate his conviction as to Count Three because the evidence was insufficient to prove that a gun was used in connection with the October 14, 2012 robbery. As a preliminary matter, the Court notes that a defendant may be convicted under § 924(c)(1)(A) if a gun is used <u>or</u> carried <u>or</u> possessed. Moral's testimony at trial was sufficient for a rational trier of fact to find beyond a reasonable doubt that a gun was carried or possessed in the course of the October 14, 2012 robbery.

Moral testified that when the Crew was planning the robbery, Serrano told Moral that he had guns to bring; that before the robbery began, Serrano had a bag containing a handgun, which was eventually handed off to Camacho; and that Camacho had a handgun strapped into his vest during the robbery. Further, Gilbert and Ynfante both testified that they saw a bulge on one of the robbers and

13

that they suspected the bulge was a firearm. Drawing all inferences in the Government's favor, a rational trier of fact could thus have found beyond a reasonable doubt that Camacho both carried and possessed a gun during the October 14, 2012 robbery. Further, a rational trier of fact could have found beyond a reasonable doubt that Serrano had advance knowledge and could foresee that one his co-conspirators would use or carry a gun during the robbery, given the evidence that he told Moral that he had guns to bring to the robbery and that he handed off a bag containing a gun to another robbery participant immediately before the robbery.

The Court accordingly declines to vacate Serrano's conviction on the basis that the evidence was insufficient to prove that a gun was used in connection with the October 14, 2012 robbery

    2.    <u>Brandishing.</u>

        a)    Legal standard.

Section 924(c)(1)(A) mandates a sentence of not less than seven years if a firearm was "brandished" during the commission of a crime of violence or drug trafficking crime. 18 U.S.C. § 924(c)(1)(A)(ii). To brandish is "to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." <u>Id.</u> § 924(c)(4).

A careful parsing of § 924(c)(4) makes clear that a firearm need not be visible to be brandished. An individual may brandish a firearm <u>either</u> by displaying it <u>or</u> by otherwise making its presence known. Any firearm that is visible is also

14

necessarily displayed; accordingly, if it were the case that § 924(c)(4) required the firearm to be visible, the statutory phrase "or otherwise make the presence of the firearm known . . . regardless of whether the firearm is directly visible" would be meaningless. However, courts generally "assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning." Bailey, 516 U.S. at 146. It follows that a firearm need not be visible to support a conviction for brandishing under § 924(c)(4); a firearm may be brandished if it is not visible but its presence is made known to another person, in order to intimidate that person.

This interpretation of § 924(c) finds support in the Fourth Circuit's decision in United States v. Groce, 398 F.3d 679 (4th Cir. 2005). There, the defendant was accused of committing a bank robbery; during the robbery, she handed a bank employee a note that said that she had a gun, but neither the district court nor the jury ever concluded that she brought a gun into the bank. Id. at 680-81. The Fourth Circuit explained that "[b]ecause 'otherwise' means 'in a different way or manner,' . . . the most straightforward reading of [§ 924(c)(4)] is that the display of all or part of a firearm is one way, of which there are others, by which one may 'make the presence of the firearm known." Id. at 681. The Fourth Circuit then went on to explain that a firearm's "presence" may be found via a showing that it is "in view or at hand." Id. at 681-82. Because neither the district court nor the jury necessarily concluded that the gun was in the bank during the robbery at issue, there was insufficient evidence that the gun was present (that is, in view or at

hand), and the Fourth Circuit accordingly vacated the defendant's sentence for brandishing. Id. at 682.

Thus, a firearm need not be visible to be brandished—it may be brandished if it is not visible but its presence is made known to another person, in order to intimidate that person, and a firearm is "present" if it is either in view or at hand. Groce, 398 F.3d at 681; see also United States v. Feliciano, 761 F.3d 1202, 1212 (11th Cir. 2014) (vacating defendant's conviction on § 924(c) brandishing charge relating to robbery because no eyewitness could testify that they saw defendant with a gun on the date of the robbery, and one witness testified that he knew "for a fact" that the defendant did not have one that day).

With regard to intimidation, § 924(c)(4) requires that the firearm be brandished "in order to intimidate" the person to whom the presence of the firearm is made known. 18 U.S.C. § 924(c)(4) (emphasis added).

    b)  Discussion.

Serrano argues that the Court should grant him a judgment of acquittal or order a new trial as to the brandishing charge because there is insufficient evidence that a firearm was visible during the October 14, 2012 robbery. However, a rational trier of fact could have found that the Government established the essential elements of brandishing beyond a reasonable doubt, even though Gilbert and Ynfante testified that they did not directly see a firearm.

First, with regard to whether the firearm's presence was made known to Gilbert and Ynfante, Gilbert testified that he saw one of the robbers clutching at something under his arm, and when asked about whether he saw a weapon, stated

16

that he had not, but without further prompting stated, "but he had this bulge here." (Tr. 658.) Gilbert also told the police immediately after the robbery that he was under the impression that one of the robbers had a gun. Additionally, Ynfante testified that she saw a black bulge that she suspected was a weapon. Taken together, all of this evidence would be sufficient for a rational trier of fact to determine that the presence of a firearm had been made known to Gilbert and Ynfante during the robbery.

Second, with respect to the presence of the firearm, Moral testified that Camacho was wearing a handgun strapped into his vest; Gilbert testified that one of the robbers was clutching at something under his arm, where his vest was, and this gesture made him think the robber had a gun; and Ynfante testified that the thing she thought might be a weapon was located in an area where "they usually get their gun."[2] (Tr. 676.) This evidence would be sufficient for a rational trier of fact to determine that during the robbery a firearm was at hand, and therefore present.

Finally, with regard to intimidation, Moral testified that the Crew sometimes used a handgun during robberies "[s]o we could intimidate the people we were robbing." (Tr. 263.) Gilbert also testified that Camacho made a gesture during the course of the robbery that made Gilbert think that Camacho had a gun. This evidence would be sufficient for a rational trier of fact to find beyond a reasonable

---

[2] Moral and Gilbert provided testimony suggesting that Camacho had a gun strapped into his vest, while Ynfante's testimony suggested that Camacho's gun was located around his waist. However, this inconsistency in the witness's testimony is no reason to grant a judgment of acquittal or a new trial, as it could have been raised at trial, and the jury is presumed to have taken such inconsistencies into account during its deliberations.

17

doubt that a handgun was used during the robbery in order to intimidate Gilbert and Ynfante. Further, it is evident that Gilbert and Ynfante were, in fact, intimidated because Camacho made the presence of the firearm known to them. Ynfante testified that she was "very nervous" throughout the entire robbery (Tr. 679), and Gilbert testified that he was scared during the robbery "because anything could have happened. Anything." (Tr. 659.) Although neither of these statements alone directly links Gilbert's and Ynfante's fear to the presence of the firearm, a rational trier of fact could have inferred that their knowledge of the firearm was an ingredient of their fear. Accordingly, Serrano is not entitled to a judgment of acquittal or a new trial as to his brandishing conviction.

IV. CONCLUSION

For the above reasons, Serrano's motion is DENIED in its entirety.

The Clerk of Court is directed to close the motion at ECF No. 485.

SO ORDERED.

Dated:  New York, New York
        January 6, 2015

                                        _____
                                        KATHERINE B. FORREST
                                        United States District Judge