f192sers kjc

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,                  New York, N.Y.

4              v.                               13 Cr. 58(KBF)

5    ANTHONY SERRANO,

6                   Defendant.

7    ------------------------------x

8                                               January 9, 2015
                                                3:05 p.m.
9

10   Before:

11                    HON. KATHERINE B. FORREST,

12                                              District Judge

13

14
                              APPEARANCES
15
     PREET BHARARA
16        United States Attorney for the
          Southern District of New York
17   BY:  RAHUL MUKHI
          Assistant United States Attorney
18

19   CESAR DE CASTRO
     VALERIE GOTLIB
20        Attorney for Defendant

21

22

23

24

25

f192sers kjc

1              (Case called)

2              MR. MUKHI:  Good afternoon.  Rahul Mukhi for the

3      United States.

4              THE COURT:  Good afternoon, Mr. Mukhi.

5              MR. DeCASTRO:  Cesar DeCastro and Valerie Gotlib for

6      Mr. Serrano, who is seated to my left.

7              THE COURT:  Good afternoon, everyone; and good

8      afternoon, Mr. Serrano, in particular.

9              We are here today for the sentencing of Mr. Serrano.

10     Let me start by setting forth for the record the materials that

11     I received in connection with this proceeding.  And you folks

12     should let me know if you think there is something that I ought

13     to have that I don't recite, because these are the pieces of

14     paper that I have now got.

15             I have received a defense submission dated December

16     26, 2014, and there is correspondence attached to that,

17     including correspondence relating to some back-and-forth about

18     what the appropriate drug quantities are for inclusion.

19             There is a letter from Mr. Serrano's wife; from his

20     nephews; from his mother-in-law; from friends; from his wife's

21     friends, who are I understand friends of his as well; from

22     neighbors.

23             There are, in addition, some pay stubs over various

24     points of time related to construction work that Mr. Serrano

25     had been involved with and had been paid for.

f192sers kjc

1          And there were also photographs of Mr. Serrano with

2      his son.

3          The court has also received a government submission

4      dated January 2, 2015, as well as a letter of today's date,

5      dated January 9, 2015.

6          Mr. DeCastro and Ms. Gotlib, have you had an

7      opportunity to see this January 9 letter?

8          MR. DeCASTRO:  Yes.

9          THE COURT:  Because it is dated today's date, you have

10     been out and about, you may not have had a chance to see it.  I

11     want to make sure you had.

12         MR. DeCASTRO:  The government made sure he e-mailed me

13     this morning and he mailed me copy as well.

14         THE COURT:  Thank you.

15         The court has also received a copy of a presentence

16     investigation report, which known by the acronym PSR.  That is

17     dated September 19, 2014.

18         Now, the PSR will be filed under seal and made part of

19     the record in this matter.  If an appeal is taken, counsel on

20     any appeal can have access to the PSR without any need for

21     further application to the court.

22         The PSR notes an offense level of 36 and a criminal

23     history category of IV.  I would note that the PSR has an error

24     where it refers to the mandatory minimum of ten years.  There

25     is no mandatory minimum of ten years.  The Alleyne case, and

f192sers kjc

1    other cases, indicate that while a court can take into

2    consideration quantities for drugs in excess of that found by

3    the jury, to increase a mandatory minimum does require a

4    finding beyond a reasonable doubt by a jury.

5                So therefore, and we will talk more about this, the

6    court does not believe that there is a mandatory minimum of ten

7    years associated with the narcotics offense of which

8    Mr. Serrano had been convicted; but, instead, that there is a

9    five-year minimum relating to the two kilos of cocaine and

10   there is also a minimum relating to the gun charge separately

11   and consecutive required by statute of seven years that is

12   accurately noted by probation.

13               Does anybody disagree with the court's statement

14   regarding the error in the PSR with respect to the mandatory

15   minimum?

16               MR. MUKHI:  No, your Honor.  We completely agree.  I

17   also just wanted to note we received on September 22 a

18   corrected page 31 to the PSR, so I just wanted to make sure

19   that was in the record as well.

20               THE COURT:  I don't have that.  Is that the only

21   change?

22               MR. MUKHI:  Yes.

23               THE COURT:  Let me take a look at that, if you could;

24   and, Mr. DeCastro, have you received that?

25               MR. DeCASTRO:  I didn't think so.  I brought

f192sers kjc

1   everything that I thought I have.  But it may that be that just

2   slipped by.  I will just confer with the government.

3          THE COURT:  My deputy is telling me that he does not

4   believe that we received this.  The date is September 22.  Let

5   me just take a look and see whether or not it changes anything.

6   By the way, this still does have the mandatory minimum for

7   Count One as noted.  That is how the offense was charged, but

8   not how the jury found it in terms of the conviction.

9          Let me just take a look at the changed language.

10         MR. MUKHI:  Your Honor, this was a correction that we

11  had highlighted from probation.  The original page 31, the one

12  that was the September 19 report, there was a discrepancy in

13  the recommendation on page 31 and the recommended sentence on

14  page 29.  So originally page 29 said recommended sentence of

15  346 months and page 31 said, We respectfully recommend that

16  your Honor impose a total sentence of 284 months.

17         THE COURT:  It is interesting because the version I

18  have in September 19 also has the 346.  So it may be that the

19  cover note to you is September 22 but, in fact, it is the

20  September 19 PSR.

21         In any event, is that the only change you are aware

22  of?

23         MR. MUKHI:  Yes.

24         THE COURT:  What we will do, Mr. de Castro, you have

25  got the September 19 PSR?

f192sers kjc

1          MR. DeCASTRO:  Yes.

2          THE COURT:  We will use the September 19 PSR because

3     that's the one which we have reviewed and which Mr. de Castro

4     has reviewed with their client.

5          Have you reviewed that with your client?

6          MR. DeCASTRO:  I have, Judge.

7          THE COURT:  And you have noted the comment by

8     Mr. Mukhi.  Is that comment already incorporated in your

9     version as it is in mine?

10          MR. DeCASTRO:  Yes.

11          THE COURT:  All right.  Do you have any objections,

12     Mr. de Castro, you or your client, to the PSR?

13          MR. DeCASTRO:  The only objections I have are noted in

14     my sentencing submission, which I assume we will discuss a

15     little, which is just holding Mr. Serrano responsible for the

16     additional narcotics, as you already noted, other than the two

17     kilos of cocaine.  But in terms of the factual recitation, no.

18          THE COURT:  All right.  Let me see how these are

19     worded.  I believe the way it is worded, apart from describing

20     the events, is that the government has conveyed to probation

21     that they believe, in paragraph 62 of the PSR, that Mr. Serrano

22     is responsible for 22 kilograms of heroin and two of cocaine.

23     I do believe that that is an accurate reflection of the

24     government's position.

25          MR. MUKHI:  That's correct.

f192sers kjc

1          THE COURT:  We can add a sentence, which would be

2    fine, which is, Mr. Serrano, defendant, has taken the position

3    that he should not be responsible for the 22 kilos of heroin.

4    I am going to tell you where I am going to come out for

5    sentencing purposes, which is that I am going to, by a

6    preponderance of the evidence, find that Mr. Serrano is

7    responsible for 22 kilos of heroin.  That is a different

8    determination than the jury has to reach by a beyond a

9    reasonable doubt standard.  My standard is a preponderance of

10   the evidence under the case law.  But if you want to have me

11   make that change, I am happy to make it to preserve your

12   position.

13          MR. DeCASTRO:  I don't think it is necessary to make

14   the change to the PSR.  I have made that clear, I think, in my

15   submission.

16          THE COURT:  Yes.  You have got it in spades in your

17   submissions.

18          MR. DeCASTRO:  So I don't think you need to make that

19   change.

20          THE COURT:  All right.  If there are no further

21   factual disputes -- Mr. Mukhi, do you have any other factual

22   disputes as opposed to the arguments?

23          MR. MUKHI:  No.  I think I interrupted your Honor

24   before your Honor confirmed with Mr. de Castro that he agrees

25   that the applicable mandatory minimum for Count One is five

f192sers kjc

1    years as opposed to ten years.

2              THE COURT:  I think he said yes, but go ahead.  Do you

3    agree?

4              MR. DeCASTRO:  I do agree.

5              THE COURT:  So the record is absolutely clear in one

6    place, the court does believe that there are two applicable

7    mandatory minimums here.  One relates to the narcotics charge

8    and now conviction, which is 60 months.  That is mandatory.

9    That's a mandatory starting point for the court.  I have no

10   discretion to go below that.

11             In addition, there is a mandatory additional

12   consecutive, by statute, seven years, which is added to that,

13   so that adds 84 months, for a total mandatory starting point of

14   144 months.  So the court has no discretion to go below 144

15   months.

16             The question is, are we at 144 months or higher than

17   144 months?  That's where the guidelines come in and also the

18   3553(a) factors.

19             Is there any dispute about that as a starting point?

20             MR. MUKHI:  No, your Honor.

21             MR. DeCASTRO:  No, Judge.

22             THE COURT:  Thank you.

23             Then what I would like to do next, before we get to

24   statements, is I will tell you, because I think it is relevant

25   to how you address the 3553(a) factors, the court's

f192sers kjc

1    determination of the amount of heroin.  As I have described,

2    this has nothing to do with the mandatory minimum.  The court

3    is required to come up with the correct guidelines calculation.

4    I am required to do that.  That requires me to come up with

5    what, as a matter of law and fact, the court determines is the

6    right amount of drug quantity.  Ultimately that goes in this

7    situation to the guidelines calculation, which is advisory.  It

8    does not change the mandatory minimums because those are things

9    the jury has to find.

10            With that said, I do find by a preponderance of the

11   evidence, based upon the court's understanding and view of the

12   evidence as I heard it come in at trial -- as you folks know,

13   so the record is clear, I was the presiding judge at the trial,

14   so I saw the evidence in realtime -- I do believe that there is

15   sufficient evidence to tie this defendant to the January 9

16   robbery.

17            The reasons for that have to do with not only the

18   testimony of Moral, but also the court is significantly

19   persuaded by the telephone calls between the defendant and

20   Camacho and also, in particular, the timing of certain calls

21   right as the incident was occurring and supposed to have ended

22   but in fact the Camachos and others had been arrested.

23            I acknowledge, and it doesn't affect the court's

24   analysis, of course, that Mr. Serrano was not physically

25   himself present where the cars where approaching the January 9

f192sers kjc

1    robbery site, but that doesn't, of course, change the legal

2    responsibility in connection with a conspiracy charge such as

3    that which we have here.

4         In addition, there is the Webster Avenue burglary,

5    where there were two kilos of heroin stolen and a kilo given to

6    Mr. Serrano, and there is additionally the heroin sold out of

7    the Serrano residence, all of which the court finds by a

8    preponderance of the evidence in fact occurred and are

9    therefore amounts attributable to the defendant.

10        I do, however, decline to include a leadership

11   enhancement in the guidelines calculation.  That leadership

12   enhancement, in terms of the two criteria, would either need to

13   be a leadership role in one of the crimes of conviction or

14   otherwise extensive.  Well, leadership role is that it had five

15   or more participants and be otherwise extensive.  So it's

16   leadership and either one of five or extensive.

17        Here I believe that that enhancement would really be

18   most appropriately added to the January 9 robbery.  In fact, I

19   think this is a complicated set of circumstances here.  I have

20   no doubt that Mr. Serrano was involved in a whole series of

21   robberies with a variety of different people, some of whom at

22   various points in time he deployed and was the leader of and

23   some of whom may have included him in things in one manner or

24   another, but he may not have led in particular various

25   operations.

f192sers kjc

1          I think the Camachos were the biggest leaders of the

2    January 9 robbery.  I think it is well and truly possible that

3    Mr. Serrano was a leader of that robbery.  I have no doubt that

4    Mr. Serrano was, generally speaking, a leader, not under the

5    guidelines, but in terms of the way the facts are of all kinds

6    of robberies and illegal activities generally.  But given the

7    facts and circumstances here, I am going to decline to impose

8    the two-point leadership enhancement.

9          That means that the guidelines calculation that

10   probation has arrived at, which is 36, would be accurate.  It

11   would not be 38.  It would be 36.  The criminal history

12   category would appropriately be IV.  That is true, by the way,

13   whether or not two points are added to the criminal history

14   category or the fact that Mr. Serrano was under a probationary

15   term for the 2012 sentence or not when he admitted the instant

16   offense.  And I say that because it doesn't matter.  He would

17   have been at seven points before or nine points.  Either way he

18   is going to fall into criminal history category IV.

19         So the court does believe and makes its factual

20   findings by a preponderance of the evidence that the

21   appropriate guidelines calculation is 36 and the criminal

22   history category is IV.

23         MR. MUKHI:  Your Honor, I believe, without leadership,

24   the offense level would be 34, not 36, due to the recent

25   amendments on November 1, 2014.

f192sers kjc

1        THE COURT:  All right.  Let me just take a look,

2   actually, and make sure I have confirmed that, but there have

3   been amendments by the 2014 guidelines manual which Mr. Mukhi

4   is suggesting would decrease this by two levels and that may

5   well be true.  So let me just double check that.  I want to

6   trust but verify for a moment.

7        Mr. de Castro, do you have a view on that?

8        MR. DeCASTRO:  That was the only thing I was going to

9   mention was the FSA reduction of two points.

10       THE COURT:  Mr. Mukhi is correct that, with the

11  changes that were put in place in November, and therefore

12  because the guidelines in effect as of the date of sentencing

13  are the guidelines which control the court's sentencing

14  proceeding, there is a two-level reduction.  Nonetheless, that

15  doesn't cause me to include a leadership enhancement that I

16  wouldn't have included anyway.

17       So the appropriately calculated offense level is 34

18  and IV.

19       Are we all in agreement?

20       MR. MUKHI:  Yes, your Honor.

21       MR. DeCASTRO:  Yes.

22       THE COURT:  All right.  From there, what I would like

23  to do is to turn to you folks and have Mr. Mukhi, if the

24  government would like to address the court before sentence is

25  imposed, Mr. de Castro and Mr. Serrano.

f192sers kjc

1          MR. MUKHI:  Yes, your Honor.

2          Just first, with respect to your Honor's finding as to

3    the defendant's responsibility for January 9, I take it your

4    Honor's finding includes his responsibility under both

5    1B1.3(1)(a), as part of his direct acts and commissions, as

6    well as because he was involved in jointly undertaking criminal

7    activity, that this was reasonably foreseeable to him; given

8    the scope of the activity and the fact of the phone records and

9    other testimony here heard at trial, that the January 9

10   attempted robbery was specifically foreseeable to this

11   defendant.

12         THE COURT:  Yes.  I think that there is probably a

13   couple of different ways we can arrive at the court's

14   determination as to the appropriate drug quantity.

15         The defendant was convicted of narcotics conspiracy,

16   and I find by a preponderance of the evidence that that

17   conspiracy included the conduct involved in the January 9,

18   2013, event and that all of the acts that were committed, that

19   he participated in the acts that were committed on that date

20   and that also what occurred on that date was certainly

21   reasonably foreseeable to him.  I have no doubt, based upon a

22   preponderance of the evidence, he was involved in the planning

23   of that offense, knew what was happening, and was intimately

24   involved, though not present.

25         MR. MUKHI:  Thank you, your Honor.

f192sers kjc

1          THE COURT:  All right.

2          MR. MUKHI:  We will be brief because we put in an

3    extensive submission and your Honor is familiar with the facts.

4    But the two things I wanted to highlight:

5          One, with respect to the October 14 robbery, there

6    were real victims to that robbery and they testified here.

7    Your Honor saw the effect that the robbery had on Mr. Gilbert,

8    who was the target of the robbery, the drug dealer, and his

9    girlfriend, Ms. Ynfante, who was a completely innocent victim.

10   Both of them testified about how traumatized they were by being

11   held up at gunpoint by Javion Camacho and being boxed in on the

12   streets in Washington Heights by this defendant.

13         Mr. Gilbert specifically testified about how what he

14   was thinking about in that moment when he was being robbed was

15   that his kids could have been with him.  They had just dropped

16   off their kids.  There were car seats for kids in the back that

17   they had just been in and that was what he was left with when

18   this defendant and others robbed him and drove off in his car

19   where his kids had been moments earlier.

20         So I think that is something we wanted to highlight as

21   important, because this was part of the plan.  It wasn't

22   accidental that there were victims in that car.  The defendant

23   knew that there were going to be victims.  Anything really

24   could have happened that night.  It was on the streets of

25   Washington Heights.  The crew thought that they were robbing

f192sers kjc

drugs and a drug dealer.  The crew was armed, and I imagine
that the crew had every belief that the victim could be armed.
Luckily there was no gun fight on that street that night, but
there very well might have been, and I think it just highlights
the defendant's actions of putting the safety of others and the
community beneath his own criminal designs and his desires to
make money and sell drugs, no matter what the risk is to others
and what the cost is to others.  So I wanted to emphasize that.

          And then the second point I just wanted to emphasize
is the recording in July of 2013, so as a 3553(a) factor, the
vast majority of this crew, as your Honor is aware, was taken
out on January 9.  The defendant was not, though he certainly
was aware that his crew was arrested that night, and you would
think that that would cause him to stop committing crimes, just
if not a moral wake up call, but a cost/benefit analysis.  At
that point, crew members that he did robberies with had been
arrested, so you would think it would enter his mind that he
would not want to commit any additional crimes, so that he
would not also be arrested.

          But, instead, in July, he is captured on tape selling
a gun, which the government didn't introduce at trial, but the
fact of the matter is he did do that; and planning an
additional burglary, the watch burglary, that we described in
our memorandum, of an individual who was going to be at mosque,
and Mr. Serrano was planning to burglarize this person.  It's

f192sers kjc

1   actually one of the reasons why he was arrested when he was.

2   Because law enforcement became aware, through that recording,

3   that he was about to commit a burglary.

4           So I think what it comments on is the fact that the

5   criminal mind-set has become so ingrained in this defendant

6   that he couldn't even stop once the majority of his crew was

7   arrested and the DEA and the government was aware of the crew.

8           He has lived many years of his life committing crimes

9   that he has been convicted for.  We went through the litany of

10  robberies he was involved in as part of this crew -- July 4,

11  2012; October 14; the money van job; and January 9 -- and you

12  add that to his history, you add that to the fact that he

13  didn't stop even after January 9.

14          I think a guidelines sentence here is an absolute

15  necessity to make sure, one, the community is protected for a

16  sufficient period; and, two, that the defendant really is

17  deterred from committing any additional crimes in the future,

18  whatever they are.

19          Thank you.

20          THE COURT:  Thank you, Mr. Mukhi.

21          Mr. de Castro.

22          MR. DeCASTRO:  Thank you, Judge.  I will also be

23  relatively brief.  I know the court has reviewed our submission

24  as well as the government's submissions.  I am not going to

25  stand here and repeat everything that is in the submission.

f192sers kjc

1          Obviously Mr. Serrano sits here today convicted after

2    trial and he still maintains his innocence for the offense.

3    And this usually is the case.  I know the government does focus

4    mostly on the nature and circumstances of the offense.

5          The only thing, as I have noted in our submission that

6    I focus on is the nature and circumstances of the offense for

7    which he was convicted.  It's obviously our position, as we

8    have made clear in our posttrial motions and in our sentencing

9    submission, is that I think while the court can and has taken

10   into consideration by a preponderance of the evidence the

11   additional robberies, if you will, our position is that it

12   still figures, while the court can do the guidelines analysis,

13   that the jury's verdict should figure somehow into this, into

14   the analysis as to his sentence.  Because without it means we

15   are going to ignore the jury verdict completely.  And I think

16   it is important that they rejected both of those heroin special

17   conditions.  I think it is an important fact.  It is an

18   interesting fact from the trial in trying to figure out what

19   that exactly means, but our position is it means that they did

20   not accept that he was part of what was the majority of the

21   government's presentation at trial.  The majority of evidence

22   was as to that January 9 robbery, and I think that his

23   knowledge even, not that that was proven, nor do we maintain

24   that he even knew that the January 9 robbery was going to

25   occur, that's not sufficient, and I figure that should figure

f192sers kjc

1   somehow in the analysis.

2          Obviously our position is that it should mean a

3   downward adjustment for similarly situated defendants.  Hard to

4   say, since most the defendants that this court has sentenced

5   were picked up on that day.  They were arrested on that January

6   9 sting operation.

7          And the government has just focused a little bit, and

8   I am not sure if they are trying to distinguish Mr. Serrano

9   from others when say there were real victims.  My understanding

10  is everyone was convicted of the same robbery conspiracy, which

11  included the October 14, 2012, robbery where there were real

12  victims.  But I don't think that distinguishes Mr. Serrano from

13  any of the other defendants that the court has sentenced here.

14         The other thing I would focus on, Judge, is just that

15  while he does have a criminal history and certainly the

16  government has made a presentation of what is a defendant

17  conspiring to commit additional crimes, I don't think the court

18  can ignore either that he does have support in his community

19  and he does have in the letters that we have submitted -- and

20  in fact we discussed this at a bail application before trial,

21  the things that he has done in his Jersey city community, I

22  think they are real.  I think they matter.  I think they speak

23  a little bit to the Anthony Serrano of today.

24         He is 40 years old today.  Not today.  It is not his

25  birthday.  But he is 40 years old and many of his prior

f192sers kjc

criminal acts were when he was a younger person.  I think he is
gaining perspective and, at the same time, Judge, I don't think
a sentence that is recommended, the advisory guidelines
sentence or any as recommended by the government and probation,
takes into account that he hasn't done that much time before.
You look at his criminal history, he has done some time in
prison, but we are talking about -- it is almost -- the numbers
are so high right now that we are throwing around ten years
like they are nothing.  And I am not suggesting the court is
doing that, I am just saying that when we talk, I think, as
lawyers going back and forth, one thing that I have learned in
my practice is when I try to just explain to family what we are
talking about, the common denominator is, wow, you are just
talking about so much time as if it is nothing, and I think it
is because we practice in this courthouse where the exposure is
so high.

          I would also just highlight, I am not going to go in
length about this, I don't think he should be -- I know the
court must take into consideration that he went to trial.
There is no doubt.  He went to trial and we learned additional
facts we probably would not have learned prior to this trial or
prior to the pretrial motions.  So certainly the court should
and will take those things into consideration.

          But the question I think also is how much of a penalty
should he receive?  He certainly doesn't get three points for

(212) 805-0300

f192sers kjc

1    acceptance of responsibility for guidelines.  I understand

2    that.  What is that value that enhances his sentence for trial

3    what people sometimes colloquially the trial penalty?

4         I would ask the court sentence him, as I have in my

5    sentencing submission, to 144 months.  I think it is more than

6    enough to deter him.  It is certainly a lot more time than he

7    has ever done.  He is going to be, if you gave 12 years, he

8    will be in his fifties when he is released.  I think that's

9    significant.

10        If the court has no other questions, I will rely on

11   our submission.

12        THE COURT:  Thank you.  I have no additional questions

13   right now.

14        MR. DeCASTRO:  Thank you.

15        THE COURT:  Mr. Serrano, is there anything you would

16   like to say to the court before sentence is imposed?

17        THE DEFENDANT:  No.

18        THE COURT:  All right.  I just want to make sure the

19   court reporter got the "no."  Thank you, sir.

20        Let me tell you, Mr. Serrano, how I reached a

21   sentencing determination for you.  Because I understand that

22   what we are talking about right now very clearly, with all

23   these lawyers talking in the room, is about you, is about your

24   life, about your family, and the impact on your family, and the

25   time that you are going to do, right?  Nobody in this room is

f192sers kjc

1   going to do this time other than you, and I want you to know

2   that I understand that and that the sentencing determination

3   that I reach isn't a number pulled out of the air, something

4   that I woke up this morning and just thought sounded right or

5   was the number *du jour*.  It is arrived at in a very careful

6   way.

7            The first thing I have to do is I have to look at the

8   sentencing guidelines.  I have to look at what that number ends

9   up being and how it is calculated and make sure I agree with

10  the calculation.  You have heard us come up with the

11  calculation, which is 34 and IV.  I am required to refer to

12  this big book I have got in my hand and see what a 34/IV is,

13  and that is 210 to 262 months for the guidelines.  But then we

14  also have Count Three, which has got the 84 months consecutive

15  to that.  So I have to acknowledge that, and I do.  I am

16  required to.

17           I am not bound by the guidelines.  They are advisory.

18  I have to always determine whether or not the guidelines

19  sentence is reasonable.  Sometimes it is reasonable.  Sometimes

20  there is a point in the guidelines range that's more reasonable

21  than another point, and I have got to find out which point

22  within a big range is reasonable.  Sometimes it is more

23  reasonable to be higher than the guidelines range and below the

24  statutory maximum.  Sometimes it is more reasonable to be

25  lower.  So I acknowledge the guidelines range and what that is.

f192sers kjc

1          Ultimately, though, my sentencing determination comes

2     from my evaluation of various factors that are set out in the

3     statute.  This is called 3553(a).  That's just a number where

4     you find it in the book.  And that statute requires that a

5     sentencing judge, like myself, determine what is a sufficient

6     but not greater than necessary sentence for a particular

7     defendant for the crimes of conviction.  So I don't just go and

8     say -- ignoring who you are or what your history is, the good,

9     the bad -- here is a number for that kind of crime.  I have to

10    think about what it is I understand you have done, what I know

11    about who you are, and arrive at what is a sufficient but not

12    greater than necessary sentence.

13          I am supposed to ask as part of that what were the

14    nature and circumstances of the various offenses?  What do I

15    know about how you committed the crimes?  What did the crimes

16    entail?  Facts and circumstances of the crime.

17          I also have to ask, and this is in the statute, what

18    is your history?  What are your characteristics?  And we will

19    talk about that more.  But we know that you have a whole series

20    of arrests.  We know you had gun arrests before.  We know you

21    have had robbery arrests and convictions before.

22          We know you have a son.  We know you are very

23    dedicated to your son.  We know you have a wife and a family.

24    We know you have friends.

25          It is never one dimension.  And I have to take the

f192sers kjc

1    history and characteristics of the defendant into consideration

2    when I am trying to come up with a sentencing determination.

3    Because certain defendants, based upon a whole series of

4    factors, seem like you have got to take them off the street,

5    right?  They have got to be incapacitated forever.  You never

6    think they are going to be able to turn it around.  There are

7    other defendants where you do think they are going to be able

8    to turn it around, and the question is, what is that point?

9    That's personal deterrence.

10           I also have to look at general deterrence.  What, as a

11   society, do we say is an appropriate sentence for people doing

12   similar crimes?  Because we don't want to send the wrong

13   message, too high or too low, because that's going to send

14   people off in different directions.  Some people, if sentences

15   are really, really low, are going to say, What's the penalty?

16   It's worth it.  I will do my time.  And other people will say,

17   That guy got a lot of time.  I'm not doing that.  It's just not

18   worth it to me.  I have got to evaluate that.  It is one of the

19   factors that I am required to evaluate.

20           I also have to look at something that's not so

21   relevant for you, is there any medical, educational,

22   vocational, or correctional treatment required by a particular

23   sentence.

24           So I take all of these and I put them together and I

25   try to come up with what is the right, sufficient, but not

f192sers kjc

1      greater than necessary sentence for you.

2              You, like some defendants, have minimums.  That means

3      that Congress has taken away the discretion of the judge about

4      a certain minimum sentence.  And that, for you, as your counsel

5      has noted, is the 144 months.  It is the 60 months for the

6      drugs, it is the plus seven years for the gun.  The robbery

7      doesn't actually have a minimum associated with it, so it is

8      144 months for the minimum.  So I can't go below 144 months.

9              How do I evaluate all these factors for you?  What I

10     do is I start with the nature and the circumstances of the

11     offense and I think to myself, How serious was this offense?

12     What's just punishment?  What's the right punishment for this

13     kind of offense and what are we talking about?

14             Well, we are talking about a number of robberies.  I

15     am convinced that you are a career robber.  Do I think that's

16     your only skill in life?  I don't think that's your only skill

17     in life.  I actually think you have got other skills in life as

18     well.  I also think that you are capable of being a good guy to

19     your family as well.  These things are not inconsistent.  You

20     can be a good father and still have a sideline of all kinds of

21     theft and robberies.  It is one of the things you know how to

22     do, and I think it is one of the things you have done over and

23     over again.  And it is not something I expect you to agree

24     with.  You have got an appeal ongoing.  And it is consistent,

25     frankly, with your history, the history of being convicted of

f192sers kjc

1   other crimes, similar crimes with guns, with half a million

2   dollars almost cargo thefts in the past for which you have

3   served time and for a whole series of things.

4           So I think with these robberies that are here, in

5   terms of the convictions, as opposed to just general

6   characteristics -- the Webster Avenue, the October 14, the

7   money van, the January 9 -- they share some common

8   characteristics, which is that you know what you are doing.

9   And you are not stupid.  And, frankly, you have become more

10  sophisticated over time and you ran a crew.  There were other

11  people.  I am not saying you are the only person who could call

12  up the crew and get them to come and report, but you had a

13  crew.  And these people and you, what you did was you robbed

14  drug dealers.  And on certain occasions you were armed.  These

15  were planned, and they were potentially violent.  Luckily there

16  is no indication that anybody was physically hurt in these.

17  And I believe it demonstrates that it was what you did.  That's

18  what I believe based upon the evidence.

19          Now you have to understand what I know about you is

20  from the trial.  What I know about you is from what people have

21  said at the trial, my evaluation of the evidence at trial.

22  That's what I have here.

23          I also believe that there were times that the Camacho

24  brothers worked for you.  I don't know if that was always or

25  only sometimes.  I don't know the extent to which that was a

f192sers kjc

1   fluid relationship.

2            But that is what we have got in terms of some of the

3   crimes of conviction.  There are other aspects to them, as

4   well, in terms of sometimes the utilization of police gear and

5   things of that nature, the use of the fake police car in the

6   October 14 robbery, etc.

7            I turn, then, from the fact that you had the very

8   serious offense of conviction, also the drug dealing, dealing

9   firearms out of your house, drugs out of your house, heroin out

10  of your apartment.  These are things which I credit the

11  testimony at trial.

12           I turn, then, to the nature and the characteristics,

13  and I ask, So that is the crime, what do I have here in terms

14  of who is the person who is before me?  Because not everybody

15  is treated the same way for the same crimes.  And what I have

16  is a not uncomplicated person.  Let me put it differently.  I

17  think I have a complicated person.

18           You had a tough life growing up.  I think that what

19  you have done with your son is admirable.  It is very hard,

20  actually, when you are not parented in a way that you were --

21  when you were parented in the way that you were parented, which

22  wasn't the kind of parenting you are giving your son, it is

23  very hard to give your son that kind of parenting.  And so

24  that's admirable.  That's a characteristic that you have.

25           But I also believe that there are these other aspects

f192sers kjc

1  that are quite troublesome, and they are things like the

2  selling of the heroin out of your home, the selling of the gun

3  out of your home, the fact that you had numerous arrests,

4  numerous chances before, and that you were doing these crimes

5  when your son had already been born.  So when you were taking

6  these risks, they were risks you were taking when he was

7  already on the scene.  You are not here being convicted of

8  crimes that you committed before he was born.  They are crimes

9  you committed after he was born.  So to a certain extent you

10  understood the risk you were running when you did that.

11         So that's also part of the mix.  Again, that makes it

12  complicated, because I don't think that you wanted to be away

13  from your son.  I think that somehow you thought that you

14  weren't going to get caught.  I think you wanted to be with

15  your son.  I think you would want to be with your son today.

16  All of that is in the mix.

17         I also think and am troubled, frankly, by the

18  ridiculous series of noise complaints and noise arrests, and

19  let me tell you why.  They are ridiculous.  There are a whole

20  bunch of them.  The reason they are so ridiculous is it is

21  consistent with the behavior of somebody who is sitting in a

22  car saying, Screw you, society, I'm going to blast my music

23  however I want, and getting arrested again and again for

24  something that is ridiculous.  And not just getting arrested

25  once, getting arrested, I have forgotten, it is like 11 times.

f192sers kjc

1          Maybe the cops in Jersey just had it out for you.  I

2     don't know.  But these noise complaints are consistent with a

3     person who is defiant, defiant in a way that is, I can do this.

4     I am better than the law.  And it is the only time, I have to

5     say, that I have ever seen anybody with that kind of series of

6     that ridiculous, pure defiance of civilized behavior.

7          So do I think you would do it again?  I think you

8     would do it again.  I think if I let you out tomorrow, you

9     would find a way to do it again.  I don't think you have come

10    remotely clean in terms of your behavior.  I think that one day

11    you might.  You have had a lot of chances so far, but you

12    haven't taken advantage of them.

13         So here we are and what do we do with all of this?  I

14    also acknowledge that you have got this young son.  I know

15    that.  I know that he needs you.  Of course he needs you.  And

16    your family would like to have you there.  I'm not unclear

17    about that at all.  I am quite clear about that.

18         But the reality is that I need to also take into

19    consideration with those facts what you have done, and it is my

20    assessment, based upon all of the factors of 3553(a), that a

21    sentence of 264 months is appropriate.  That's a downward

22    variance.  It is, in fact, a substantial downward variance.

23         The reason why I am substantially varying downward is

24    because I actually think that when you are in your fifties, you

25    are likely to have done enough time, have wanted to change your

f192sers kjc

1    ways, and want to be with your son in a way he can look at you

2    and be proud of you and not feel like you are going to be going

3    back to jail when you are an old man.

4              And this breaks down in the following way:

5              In the court's view, 15 years is appropriate

6    essentially for the burglary and the drug crimes, and that's

7    180 months.  Then consecutive to that is the 84 months for the

8    gun crime.  That totals 264 months.

9              I note that Javion Camacho got 250, so it is slightly

10   more than what he got.

11             I have taken into consideration your counsel's

12   arguments about penalty for trial.  I am not penalizing you for

13   going to trial.  You have got a right to go to trial.  You have

14   got a constitutional right to go to trial, and I acknowledge

15   that.  I think your counsel is absolutely right to raise

16   whether or not that ends up occurring sometimes.  It hasn't

17   occurred here.  I am not penalizing you for that.  I am

18   penalizing you for what I think are all of the factors under

19   3553(a).

20             I need to go through each of the counts and tell you

21   how it breaks down.

22             Count One, which is carries the minimum of five years,

23   the court is imposing the 15 years, 180 months.  Count Two is

24   also 180 months.  They are to run concurrent, so at the same

25   time.  So that's the 180 months I was talking about.

f192sers kjc

1          Count Three is, by statute, consecutive, meaning it

2     has to run, by statute, after.  That's the 84 months.  So you

3     will serve the 180 months first.  You have already started to

4     serve that, in fact.  Then you will serve the 84 months at the

5     end.

6          That's a total of 264 months.

7          The reason it is a downward variance is because the

8     guidelines would have you at 346 months.  But I believe, as I

9     have stated, that all of the qualities relating to the

10    robberies, relating to the drugs, relating also to who you are

11    merit that a downward variance is appropriate here.  I don't

12    think that more than 15 years is necessary for those crimes.

13    And that's why I am varying downward.  I don't think you need

14    30 years for those.

15         In terms of supervised release, there will be

16    supervised release imposed.  In fact, some of it is required.

17    Under Count One, there has to be at least five years --

18    actually it is not.  It is because it is a (b) now, so it is

19    four years.  So it is a four-year requirement for Count One.

20         I will impose, then, the four years of supervised

21    release for Count One.

22         It is a maximum of three years for Count Two, and I

23    impose max the three years for Two, which is going to run

24    concurrent; and three years for Count Three, which I am also

25    going to run concurrent.

f192sers kjc

1          So you will serve a total of four years of supervised

2   release.

3          I don't believe there is any sentencing disparity

4   between you and the other individuals who were sentenced in

5   what we call the Camacho proceedings because the facts and

6   circumstances of your offenses are different from theirs.

7   There is some overlap, there is no doubt about it, but their

8   situation and each of their individual circumstances as

9   individual defendants were taken one by one, and I have

10  evaluated you as against each of them to ensure that there is

11  no undue sentencing disparity.

12         There are going to be certain conditions going along

13  with supervised release, mandatory conditions:

14         One, you can't commit another federal, state, or local

15  crime;

16         Two, you can't illegally possess a controlled

17  substance.

18         Three, I am going to have you do one random drug test

19  within 15 days of the commencement of your period of supervised

20  release and two random drug tests thereafter.  The reason for

21  that is you have had some drug use in the past.  Sometimes

22  people who are dealing in heroin have been users of something

23  in the past; and, frankly, sometimes there are drugs in jail,

24  so people don't always get clean in jail, though we would like

25  to think that they did.  So it is useful to have that.

f192sers kjc

1      Four, you shall not possess a firearm, destructive

2  device.

3      Five, you shall cooperate in the collection of DNA.

4      And there are going to be standard conditions 1

5  through 13.

6      I am also going to impose the following special

7  conditions:

8      One, you shall provide the probation office with any

9  requested financial information;

10      Two, you shall submit your person, vehicle, and place

11  of residence to searches as reasonably requested by probation;

12      Three, you are to report to the nearest probation

13  office within 72 hours of your release from custody, and you

14  will be supervised in your district of residence.

15      There will be a special assessment, which I am

16  required to impose; $300.  It is $100, mandatory by statute,

17  for each of the offenses of conviction, that is due and payable

18  as soon as practicable.

19      I am not going to impose a fine because any financial

20  resource which you or your family may have which would be

21  accessible to you are needed by your family in your absence, so

22  I decline to impose a fine.

23      I don't know if there are any property or proceeds

24  that are subject to forfeiture.  Under the statute forfeiture

25  would be required of any property or proceeds traceable to the

f192sers kjc

1    offense.  Mr. Mukhi, the government should submit an order to

2    the court if the government is seeking forfeiture here.

3            MR. MUKHI:  Your Honor, we are not going to seek

4    forfeiture.

5            THE COURT:  There is no order of forfeiture imposed,

6    and there is no order of restitution.

7            Do counsel have any legal or other reason why sentence

8    should not be imposed as stated?

9            MR. MUKHI:  No, your Honor.

10           Just so I am clear, your Honor imposed on Count One

11   and Count Two 180 months, each to run concurrently; and on

12   Count Three 84 months to run consecutively to both Counts One

13   and Two.

14           THE COURT:  Correct.  And it must be, by statute,

15   consecutive to One and Two, so that will be consecutive to the

16   180 months, for a total of 264.

17           MR. MUKHI:  Thank you.

18           MR. DeCASTRO:  No, Judge.

19           THE COURT:  Then the court does impose sentence as

20   stated.

21           There are any open counts, Mr. Mukhi?

22           MR. MUKHI:  Your Honor, there is an open indictment

23   and the government moves to dismiss it at this time.

24           THE COURT:  All right.  Then that is dismissed.

25           Mr. Serrano, you have a right to appeal.  Any notice

f192sers kjc

1    of appeal has to be filed within 14 days of the filing of the

2    judgment of conviction.  Your counsel should follow when that

3    will happen, but it's going to happen probably Monday.  That's

4    when it is likely to be filed.  It is not going to be this

5    afternoon.  So your time will start to run.

6            Now, if you can't afford the cost of appeal, you are

7    entitled to petition to proceed to have those costs waived.

8    That's proceeding *in forma pauperis*, and you are entitled to

9    make such a petition.

10           Are there any other applications which the court

11   should be made aware of at this time?

12           MR. MUKHI:  Not from the government, your Honor.

13           MR. DeCASTRO:  Judge, the only application we have is

14   that you make a recommendation to the Bureau of Prisons that he

15   been housed at a facility as close as possible to Jersey City,

16   where his wife and child reside.

17           THE COURT:  Would Fort Dix be the closest?  I don't

18   know if he will meet the security level.

19           MR. DeCASTRO:  I don't know what the security level

20   issue is.  I have a call in to BOP.  They just haven't gotten

21   back to me yet.  If they tell me that there is a particular

22   facility that I should request, I would write a letter next

23   week.  But if your Honor would just recommend that it be as

24   close to Jersey city as possible --

25           THE COURT:  What we will do, and I will put a finer

f192sers kjc

1   point on it because of the age of his son, what I will do is

2   say the court does recommend that he been housed in a facility

3   as close to Jersey city as possible to allow for as frequent

4   visitation as is practicable for his very young son.  The court

5   finds that continued visitation between the parent and son is

6   very important here, so I will make that recommendation.

7            MR. DeCASTRO:  Thank you, Judge.

8            THE COURT:  Is there anything further?

9            MR. MUKHI:  No, your Honor.  Thank you.

10           THE COURT:  Then we are adjourned.

11                              - - -

12

13

14

15

16

17

18

19

20

21

22

23

24

25