```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                                 :
UNITED STATES OF AMERICA,                                        :
                                                                 :    ORDER DENYING MOTION
        -against-                                                :    FOR REDUCTION IN
                                                                 :    SENTENCE
ANTHONY SERRANO,                                                 :
                                                                 :    13 Cr. 58 (AKH)
                                        Defendant.               :
                                                                 :
---------------------------------------------------------------- X
```

ALVIN K. HELLERSTEIN, U.S.D.J.:

      Anthony Serrano, who is currently serving a 264-month sentence for narcotics conspiracy, Hobbs Act robbery conspiracy, and possession of firearms in connection with a drug trafficking crime and crime of violence, moves for compassionate release in light of the COVID-19 pandemic, his numerous preexisting health conditions, and the sentencing factors in 18 U.S.C. § 3553(a). Serrano's motion is denied.

## BACKGROUND

      Serrano is forty-six years old. He has numerous health conditions, including obesity, hypertension, prediabetes, sleep apnea, high cholesterol, and metabolic disorder. *See* Gov. Ex.[1] B (Serrano's medical records). His prior criminal history includes convictions for burglary, conspiracy to commit burglary, being a felon in possession of a firearm, possession of a weapon, making terroristic threats, and criminal mischief. *See* Presentence Investigation Report at 14-18.

      As to the instant offenses, Serrano was charged with conspiracy to distribute and possess with intent to distribute heroin and cocaine, in violation of 21 U.S.C. § 846 ("Count

---

[1] "Gov. Ex." refers to an exhibit annexed to the Government's brief in opposition to Serrano's motion for compassionate release.

One"); conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 ("Count Two"); and the use, carrying, and possession, and aiding and abetting the use, carrying, and possession of a firearm in relation to (i) "a drug trafficking crime . . . , namely, the narcotics conspiracy charged in Count One" and (ii) "a crime of violence . . . , namely, the robbery conspiracy charged in Count Two," in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and (c)(2) ("Count Three").  Following a jury trial before the Honorable Katherine B. Forrest, Serrano was convicted of all three counts.[2]  Judgment (Jan. 13, 2015), ECF No. 512.

Serrano was part of a robbery crew that robbed drug dealers.  According to evidence presented at trial, on October 14, 2012, members of the crew, impersonating police officers and armed with a gun that Serrano provided, committed a carjacking of a drug dealer and the drug dealer's girlfriend.  *See* Opinion & Order at 1-5 (Jan. 6, 2015), ECF No. 506.  The Government also presented evidence that between 2012 and 2013, Serrano helped plan and/or execute additional theft, gun, and drug crimes.  Gov. Ex. A ("Sentencing Tr.") at 9:10-10:9; *see also United States v. Serrano*, 640 F. App'x. 94, 97-99 (2d Cir. 2016) (affirming district court's admission of evidence regarding uncharged crimes).  In one instance, on January 9, 2013, members of the crew carried weapons and planned to pose as law enforcement officers to rob what turned out to be a fictitious shipment of heroin.  The fictitious shipment was organized by the Drug Enforcement Administration in order to catch the crew.  Serrano was not present for the January 9, 2013 incident, but the sentencing judge found by a preponderance of the evidence that he was involved in the planning and remained in contact with his coconspirators.  Sentencing Tr. at 9:10-10:3, 13:15-24.

---

[2] By special verdict, as to Count One, the jury found beyond a reasonable doubt that Serrano conspired to distribute or possess with intent to distribute cocaine but not heroin.  Verdict Form (June 24, 2014), ECF No. 440.

Judge Forrest sentenced Serrano to a total of 264 months in custody: 180 months for Counts One and Two, which represented a downward variance from the Guideline range of 210 to 262 months, to be served consecutively with the statutory minimum of 84 months on Count Three.  Sentencing Tr. at 8:11-15, 21:7-16, 28:18-22; Judgment at 2.  The Court also imposed a four-year term of supervised release.  Sentencing Tr. at 30:15-25; Judgment at 3.  In arriving at the sentence, Judge Forrest took into account, among other factors, Serrano's status as a "career robber," history with guns and drugs, and leadership role within the crew.  Sentencing Tr. at 22:1-29:19.  Judge Forrest balanced that background against Serrano's difficult upbringing and dedication to his young son.  *Id.*  The Second Circuit upheld the reasonableness of the sentence.  *Serrano*, 640 F. App'x at 99-100.

The case was subsequently transferred to me.  Serrano now moves for compassionate release.  Having been in custody since August 1, 2013, he has served approximately 85 months of his 264-month sentence.  He is currently incarcerated at FCI Loretto and is scheduled for release on April 30, 2032.

## DISCUSSION

"[T]he court, . . .upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Ogarro*, No. 18-cr-373-9 (RJS), 2020 WL 1876300, at

3

*2 (S.D.N.Y. Apr. 14, 2020) ("[A] court may 'reduce' a defendant's sentence where 'extraordinary and compelling reasons warrant such a reduction,' and such relief would be consistent with both the factors in 18 U.S.C. § 3553(a) and 'applicable policy statements issued by the Sentencing Commission.'" (quoting 18 U.S.C. § 3582(c)(1)(A))). Defendant bears the burden of showing he is entitled to this relief. *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

### I. Exhaustion of Administrative Remedies

A defendant meets the compassionate release provision's exhaustion requirement where he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or where 30 days have lapsed since the defendant's application to the warden for compassionate release. 18 U.S.C. § 3582(c)(1)(A). "[T]he statute does not necessarily require the moving defendant to fully litigate his claim before the agency (i.e., the BOP) before bringing his petition to court. Rather, it requires the defendant either to exhaust administrative remedies or simply to wait 30 days after serving his petition on the warden of his facility before filing a motion in court." *United States v. Haney*, No. 19-cr-541 (JSR), 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020) (emphasis in original)).

Here, over thirty days have lapsed since Serrano's application to the warden for compassionate release. On April 15, 2020, Serrano's fiancée applied on his behalf for compassionate release, citing health conditions that place him at increased risk for complications from COVID-19. Def. Reply Ex.[3] B. She received notice the same day that the request was denied. *Id.* Because "[t]he Bureau of Prisons processes a request made by another person on behalf of an inmate in the same manner as an inmate's request," 28 C.F.R. § 571.61(b), Serrano's

---

[3] "Def. Reply Ex." refers to an exhibit annexed to the Reply Memorandum of Law in Support of Defendant Anthony Serrano's Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i).

4

fiancée's application on his behalf was effective to meet the threshold requirement under 18 U.S.C. § 3582(c)(1)(A).

## II. Extraordinary and Compelling Reasons

Among a list of extraordinary and compelling reasons justifying compassionate release, the Sentencing Commission lists "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, note 1(A)(ii). Serrano suffers from obesity, hypertension, prediabetes, sleep apnea, high cholesterol, and metabolic disorder. According to the Centers for Disease Control and Prevention, individuals who are obese are at increased risk of severe illness from COVID-19, and those with hypertension might be at increased risk. Centers for Disease Control and Prevention, *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 14, 2020). Furthermore, due to concern that Serrano's CPAP machine could make him more contagious to inmates in the event he contracts COVID-19, prison authorities have told him he must either forgo use of the CPAP machine or enter segregation. Def. Reply Ex. C, ¶ 3. Because Serrano lives in a unit with over 100 other inmates and sleeps in a cubicle with five other inmates, he is unable to practice social distancing measures that reduce his risk of contracting COVID-19. *Id.*, ¶¶ 1-2. Fifty-nine inmates at FCI Loretto have tested positive for COVID-19, though there are not currently any known active cases among the inmates. *See* Bureau of Prisons, *COVID-19: Coronavirus*, https://www.bop.gov/coronavirus/ (last visited Sept. 1, 2020).

Since the onset of the COVID-19 pandemic, numerous courts have held that the presence of preexisting conditions that increase the risks associated with the virus, in combination with the conditions of confinement, constitute extraordinary and compelling reasons

5

for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A). *See., e.g.*, *United States v. Scparta*, No. 18-cr-578 (AJN), 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) (modifying sentence to time served where inmate's hypertension, sleep apnea, and high cholesterol, in combination with risk of COVID-19, presented extraordinary and compelling reasons); *United States v. Zuckerman*, No. 16 Cr. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (modifying remainder of sentence to home confinement where inmate's age, diabetes, hypertension, and obesity, in combination with risk of COVID-19, presented extraordinary and compelling reasons). The Government concedes that Serrano can show extraordinary and compelling reasons for a reduction in sentence. I agree that Serrano's health conditions, which are difficult to manage in light of current conditions of confinement and place him at increased risk for severe illness if he contracts COVID-19, constitute extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i).

**III.  Section 3553(a) Factors and Policy Statements of the Sentencing Commission**

"The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." *United States v. Gotti*, 433 F. Supp. 3d 613, 615 (S.D.N.Y. 2020).

The most relevant 3553(a) factors here include:

- "[T]he nature and circumstances of the offense and the history and characteristics of the defendant";
- The need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense";
- The need for the sentence "to afford adequate deterrence to criminal conduct";

6

- The need for the sentence "to protect the public from further crimes of the defendant";

- The need for the sentence "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; and

- "The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Under the Sentencing Commission's policy statement, the court may grant compassionate release where "[e]xtraordinary and compelling reasons warrant the reduction," "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and "[t]he reduction is consistent with [the] policy statement." U.S.S.G. § 1B1.13.

In this case, the Section 3353(a) factors and the danger Serrano poses to the community override any extraordinary and compelling reasons justifying his release. His offenses are serious. He was an active part of a robbery crew that was willing to impersonate law enforcement and use firearms to assert its will. He participated in the robbery of a drug dealer on a public street, where a coconspirator brandished Serrano's gun. This incident posed a danger not only to the direct victims but to the public at large. This was also not new behavior for Serrano. His criminal history dates back to 1993 and includes offenses involving theft, weapons, and violent threats. Serrano was not sufficiently deterred by shorter prison sentences.

Serrano highlights the disparity between his sentence and those of his codefendants. Among the eighteen codefendants who were convicted of at least one crime in connection with this conspiracy, sentences varied from time served to 324 months, and Serrano has one of the most severe sentences. I previously granted compassionate release to a

7

codefendant who pleaded guilty to Count Two and had served approximately 90 months of his 151-months sentence.

However, Serrano is differently situated from his codefendants for many reasons. He was convicted of all three counts of his indictment, whereas most of his coconspirators pleaded guilty to one or two counts. Indeed, the only other codefendant to be convicted on all three counts is serving a longer sentence than Serrano. Unlike those who pleaded guilty, Serrano did not accept responsibility for his crimes. *See Serrano*, 640 F. App'x at 100 (noting, in rejection of challenge to sentencing disparities between Serrano and codefendants, that "Serrano has failed to demonstrate that co-defendants who received lower sentences were, in fact, similarly situated to him" because "co-defendants receiving lower sentences pleaded guilty, whereas Serrano proceeded to trial and did not accept responsibility for his conduct"). He was also convicted in connection with different conduct. While several coconspirators allocuted only to participation in the January 9, 2013 attempt to rob the fictitious shipment of heroin, Serrano was convicted in part for his participation in the October 14, 2012 robbery of a drug dealer and the drug dealer's girlfriend. As the Government highlighted at sentencing, the October 14 incident had "real victims" who were left "traumatized" after they were "held up at gunpoint by [codefendant] Javion Camacho and . . . boxed in on the streets in Washington Heights by [Serrano]." Sentencing Tr. at 14:5-12. Furthermore, the Government presented evidence of a pattern of Serrano's thefts and dealing of firearms and drugs.

Serrano has shown signs of reform in prison. He has completed twelve educational courses, including courses dedicated to drug education, preparation for release, and business skills. Def. Ex.[4] C. He has not been the subject of an incident report since 2016. *Id.* Finally, he appears dedicated to caring for his son.

---

[4] "Def. Ex." refers to an exhibit annexed to Serrano's Motion for a Reduction in Sentence Pursuant to the First Step Act and the Changes to the Compassionate Release Statute and 18 U.S.C. § 3582(c)(1)(A)(i).

Nonetheless, I am not convinced that Serrano is sufficiently reformed and prepared to conduct a life without crime. Serrano has only served about one-third of an appropriately lengthy sentence. *See United States v. Butler*, No. 19 Cr. 834-10 (PAE), 2020 WL 1689778, at *3 (S.D.N.Y. Apr. 7, 2020) (highlighting contrast between defendant who had served only one-fourth of sentence and those defendants who have served "substantial majority of their sentences"). He has shown disregard for the law in the past, and releasing him at this stage in his sentence will pose a danger to the community and militate against the goals of deterrence and respect for the law. *See United States v. Cooper*, No. 16-cr-567-3 (JSR), 2020 WL 4937477, at *2 (S.D.N.Y. Aug. 24, 2020) (denying motion for compassionate release where "prior prison term did not deter [defendant] from returning to gunpoint robbery," defendant "has served less than 40% of his . . . sentence," and therefore, "the Court concludes that [defendant] still presents a continuing danger to the community").

## CONCLUSION

For the foregoing reasons, Serrano's motion for compassionate release is denied. The Clerk is directed to close the open motions, ECF Nos. 757, 764.

SO ORDERED.

Dated:      September 3, 2020                     /s/ Alvin K. Hellerstein
            New York, New York                    ALVIN K. HELLERSTEIN
                                                  United States District Judge